## STARR v PROVIDENCE HOSPITAL

Docket No. 45488. Submitted October 14, 1980, at Detroit.—Decided
June 18, 1981.

Jewell Starr and Henry Starr, her husband, brought an action
against Providence Hospital in Oakland Circuit Court alleging
that she had sustained personal injuries while a patient in a
postoperative "special care unit" following surgery for a hiatus
hernia and that Henry Starr was entitled to damages for his
loss of consortium. Plaintiffs alleged that Mrs. Starr suffered
severe psychological injury when an elderly male patient
climbed into her bed. The jury returned a verdict of no cause of
action in favor of defendant and judgment was entered, Rich-
ard D. Kuhn, J. Plaintiffs appeal, contending that the trial
court erred in giving jury instructions regarding the standard
of care and the issue of professional negligence because their
cause of action was based upon ordinary negligence rather than
malpractice. *Held:*

The issues in this case, with regard to the degree of supervi-
sion in the "special care unit" and the adequacy of restraints,
are issues involving professional judgments which are beyond
the common knowledge and experience of laymen to judge. The
trial court's determination that expert testimony was required
to establish professional negligence was proper.

Affirmed.

1. PHYSICIANS AND SURGEONS — HOSPITALS — MALPRACTICE — WIT-
NESSES — EXPERT WITNESSES.

Expert testimony is an absolute prerequisite to a patient's right
to recover for alleged malpractice from either a physician or a
hospital.

2. NEGLIGENCE — HOSPITALS — EVIDENCE — EXPERT EVIDENCE.

Expert evidence is not required to make out a case against a

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons and Other Healers §§ 348,
349.

Necessity of expert evidence to support an action for malpractice
against a physician or surgeon. 81 ALR2d 597.

[2] 61 Am Jur 2d, Physicians, Surgeons and Other Healers § 350.

hospital for the injury or death of a patient resulting from the hospital's negligence where the negligence was such as to be within the comprehension of laymen and to require only common knowledge and experience to understand and judge it.

*Zeff & Zeff (Edward Grebs,* of counsel), for plaintiffs.

*Franklin, Petrulis, Lichty & Mellon, P.C.* (by *J. Steven Johnston),* for defendant.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

PER CURIAM. This is an action for personal injuries alleged to have been sustained by plaintiff, Jewell Starr, while a patient in a postoperative "special care unit" in Providence Hospital. Henry Starr, her husband, alleged loss of consortium.

Plaintiff Jewell Starr was admitted to Providence Hospital on July 9, 1974, for surgical repair of a hiatus hernia. Surgery was performed on July 10, 1974, and Mrs. Starr remained in a semiconscious state for the next two to three days. In the late evening of July 12, 1974, or early morning of July 13, 1974, another patient climbed into or attempted to climb into her bed. The other patient, an elderly man suffering from terminal bladder cancer and the aftereffects of alcoholism, was in a confused state at the time. As a result of this incident, Mrs. Starr alleged that she suffered severe psychological injury.

Plaintiffs appeal as of right from a jury verdict of no cause of action in favor of defendant.

Plaintiffs contend that the trial court erred in giving jury instructions regarding the standard of care and the issue of professional negligence.

* Circuit judge, sitting on the Court of Appeals by assignment.

The pertinent part of the instructions complained of reads as follows:

*"I charge you that the plaintiff has the duty to introduce and produce testimony establishing the standard of care existing for hospitals and their staff for the operation and running of a 'special care unit'* in the City of Southfield or similar communities for the year 1974; and I further charge you that the plaintiff must carry the burden of proof that there was a violation of said standard by the defendant hospital or its employees and that if the plaintiff failed to establish said standard and a violation of same, you must return a verdict of no cause of action as to the defendant hospital.

\* \* \*

"The plaintiff has the burden of proof on each of the following propositions:

"a) That the plaintiff was injured or sustained damages;

"b) That the defendant was *professionally negligent* in one or more of the ways claimed by the plaintiff as stated to you in these instructions; and

"c) That the *professional negligence* of the defendant was a proximate cause of the damages to the plaintiff.

"Your verdict will be for the plaintiff if she was injured and the defendant was *professionally negligent* and such negligence was a proximate cause of the injuries.

"Your verdict will be for the defendant if the plaintiff was not injured; or if defendant was not *professionally negligent;* of if *professionally negligent* such negligence was not a proximate cause of the injuries." (Emphasis added.)

Plaintiffs contend that the court erred in instructing the jury that plaintiffs had to establish a standard of care existing for the defendant and that defendant had violated that standard of care. Further, plaintiffs contend that the trial court

erred in instructing the jury that plaintiffs had the burden of proving that defendant was professionally negligent.

The essence of plaintiffs' objections is that their cause of action was based upon ordinary negligence rather than malpractice.

It is a well-settled general rule in Michigan that expert testimony is required in an action for malpractice against a hospital. In *Bivens v Detroit Osteopathic Hospital,* 77 Mich App 478, 488; 258 NW2d 527 (1971), the Court stated:

"We also recognize that expert testimony is an absolute prerequisite to a patient's right to recover for alleged malpractice from either a physician or a hospital. *Brandon v Art Centre Hospital,* 366 F2d 369, 371 (CA 6, 1966), *Lince v Monson,* 363 Mich 135, 139; 108 NW2d 845 (1961)".

There is also a well-recognized exception to that general rule as stated in 40 ALR3d 515, 523:

"[W]here a hospital's negligence was such as to be within the comprehension of laymen and to require only common knowledge and experience to understand and judge it, expert evidence is not required to make out a case against a hospital for the injury or death of a patient resulting from such negligence."

See also *Lince v Monson, supra, Paulen v Shinnick,* 291 Mich 288; 289 NW 162 (1939), *Perri v Tassie,* 293 Mich 464; 292 NW 370 (1940).

Plaintiffs' allegations of negligence at trial involved the supervision necessary in the "special care unit" and the type of restraints that should have been used on the elderly patient.

The cases relied upon by plaintiffs, *Fogel v Sinai Hospital of Detroit,* 2 Mich App 99; 138 NW2d 503

(1965), and *Gold v Sinai Hospital of Detroit,* 5 Mich App 368; 146 NW2d 723 (1966), involve issues of ordinary negligence and are distinguishable from the case at bar. Both *Fogel* and *Gold* were cases involving patients who fell while being assisted by nurses.

The issues in the case at bar, with regard to the degree of supervision in the "special care unit" and the adequacy of restraints, are issues involving professional judgments which are beyond the common knowledge and experience of laymen to judge.

There was testimony to the effect that a "special care unit" involves different care and treatment from other hospital care units, *i.e.,* ward; intensive care; coronary care. The record contains no evidence of an attending physician or other professional ordering that either of these patients was to receive constant attention. Without expert testimony, a jury would be speculating as to the type of care that one should expect in a "special care unit". *Bivens v Detroit Osteopathic Hospital, supra,* is analogous where expert testimony was required in determining whether leaving a patient unattended constituted malpractice.

The type of restraints to be employed and the use thereof also involve professional judgment. As noted during the trial, several different types of restraints are available, some of which are so severe that they may be used only when authorized by a physician. In addition, the physical condition of the patient to be restrained must also be taken into consideration. Where the restrained patient is ill, as in this case, the use of an improper restraint could be detrimental to his health.

In essence, this is a case that involves issues of

medical management. The trial court's determination that expert testimony was required to establish professional negligence was proper. Further discussion is not required. The judgment of the trial court is affirmed.